**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ROBERT MAGRUDA,              )
                                  )
         Plaintiff,          )
                                    )
        v.                 )       Civil Action No. 06-00995
                                    )
BELLE VERNON AREA SCHOOL DISTRICT,  )
                                    )
        Defendant.        )

## MEMORANDUM OPINION

## I.    INTRODUCTION

This case stems from Plaintiff Robert Magruda's ("Magruda") thirty-year employment as a school bus mechanic with Defendant Belle Vernon Area School District ("Belle Vernon"), and turns primarily on a dispute as to whether Plaintiff worked the requisite 1,250 hours during the previous 12-month period to qualify for leave under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, *et seq.* Plaintiff claims that he was unlawfully terminated December 20, 2005 after Defendant denied his FMLA request. Both parties have filed motions for summary judgment. (Docket Nos. 37 and 39). For the reasons outlined herein, the Court DENIES Defendant's Motion for Summary Judgment (Docket No. 39), and GRANTS, in part, and DENIES, in part, Plaintiff's Motion for Partial Summary Judgment (Docket No. 37).

## II.    FACTUAL BACKGROUND

The operative facts of the instant case involve a series of disputes over FMLA medical leave between Magruda and Belle Vernon. Magruda was an employee of the Belle Vernon Area School District from 1975 through December 2005. (Docket No. 38 at ¶ 1). During this period, Magruda

was first employed as a bus driver, and later as a bus mechanic. (Docket No. 38 at 1). Magruda applied for the bus mechanic job in 1993, but was not immediately awarded the position. (Docket No. 42 at 2). After filing a grievance under his union's collective bargaining agreement ("CBA") that was sustained, Magruda was awarded the position and began work as a bus mechanic in 1995. (*Id.*). There were no grievances or other disputes between Magruda and Belle Vernon from 1995 through 2002. (*Id.* at 2).

At some point prior to November 6, 2002, Magruda informed Belle Vernon he would be taking a scheduled leave of absence so that he could undergo gastric bypass surgery. (Docket No. 40-6 at 2). On November 6, 2002, Belle Vernon mailed Magruda a letter acknowledging his planned absence and requesting he fill out a FMLA Health Care Provision Certification. (*Id.*). Magruda's FMLA application was effective beginning on December 3, 2002, and his surgery was scheduled for December 4, 2002. (Docket No. 40-7 at 2; Docket No. 40-9 at 5).

The period of Magruda's absence for gastric bypass surgery attributable to his FMLA leave request was from January 21, 2003 to March 28, 2003. (Docket No. 40-9 at 5). The total amount of FMLA leave utilized by Magruda for his gastric bypass absence was forty-nine days. (Docket No. 40-9 at 5).

Beginning on December 5, 2003, Magruda took a planned leave of absence from Belle Vernon for a second operation. (Docket No. 40-2 at 16; Docket No. 40-9 at 4; Docket No. 42 at 3). The second operation was to remove excess skin resulting from dramatic weight loss after the gastric bypass surgery. (Docket No. 40-2 at 16; Docket No. 42 at 3). Magruda informed his supervisor of his intentions, and that he planned on utilizing previously accumulated sick days, vacation days, and

FMLA leave unused from his first surgery. (Docket No. 40-9 at 4, 6).

From December 5, 2003 to February 6, 2004, Magruda made several calls to Belle Vernon while on leave. (Docket No. 40-9 at 4-6). On February 6, 2004, the Belle Vernon superintendent returned a call from Magruda. (*Id.* at 4). During this call, the superintendent informed Magruda that he was on unpaid leave and would be billed for his medical expenses. (*Id.* at 5). Belle Vernon sent Magruda a letter on February 10, 2004, notifying him that he must pay the cost of his medical benefits while on unpaid leave. (*Id.*). On February 20, 2004, Belle Vernon sent Magruda a memo informing him that he had exceeded his available sick days. (*Id.*). The Belle Vernon Superintendent of Schools, Robert S. Nagy, sent Magruda a letter on March 2, 2004 informing him that he had "voluntarily abandoned" his position for being on unapproved, unpaid, leave. (Docket No. 40-8 at 2; Docket No. 40-9 at 5).

Magruda responded to the March 2nd letter with a letter dated March 8, 2004. (Docket No. 40-9 at 5). In Magruda's March 8th response, he stated his understanding that he only needed a doctor's excuse to verify his absence and that he would compensate Belle Vernon for his accrued medical benefits. (Docket No. 40-9 at 6). However, the Belle Vernon Board of School Directors terminated Magruda's position on March 15, 2004, and Magruda was informed of his termination on the same day. (Docket No. 40-9 at 6). Magruda then filed a grievance over his termination on March 19, 2004. (Docket No. 40-9 at 6). Magruda's physician medically cleared him for work starting on April 1, 2004. (Docket No. 40-9 at 6).

Magruda's grievance was submitted to arbitration per the collective bargaining agreement between his union and Belle Vernon. (Docket No. 40-9 at 3,8). Central to the arbitration was whether

the availability of Magruda's FMLA leave tolled on December 3, 2003, exactly one year after his initial FMLA application, or if he retained the unused portion of his FMLA leave past this date. (Docket No. 40-9 at 15-16). The arbitrator ruled in favor of Magruda on March 3, 2005, and reinstated him with full back pay and benefits effective April 1, 2004. (Docket No. 40-9 at 17; Docket No. 41 at 4). Magruda returned to work at Belle Vernon in April of 2005. (Docket No. 42 at 4; Docket No. 40-2 at 21).

Several months after returning to work, Magruda took a third planned absence from around June 27, 2005 to September 7, 2005. (Docket No. 40-2 at 23; Docket No. 40-21 at 6; Docket No. 42 at 4). This absence occurred so that Magruda could have shoulder surgery to repair a torn rotator cuff and bicep rupture. (Docket No. 40-2 at 22; Docket No. 42 at 4). Magruda initially planned to use accumulated sick and vacation days to account for his leave. (Docket No. 40-2 at 22-25; Docket No. 42 at 4). Because his accumulated sick and vacation days where insufficient for the entire estimated recuperation time, Magruda intended to supplement them with FMLA medical leave. (Docket No. 40-2 at 22). To this end, Magruda applied a second time for FMLA medical leave on July 27, 2005. (Docket No. 40-2 at 25; Docket No. 40-11 at 4; Docket No. 42 at 4). On September 7, 2005, Magruda was medically cleared to work and returned to his job at Belle Vernon. (Docket No. 40-2 at 28; Docket No. 40-21 at 6). Upon his return to work, Magruda was presented with a letter from the Belle Vernon superintendent that was dated September 1, 2005. (Docket No. 40-12 at 2; Docket No. 40-21 at 6; Docket No. 42 at 4). The September 1, 2005 correspondence denied Magruda's July 27th request for FMLA leave because Belle Vernon reasoned he had not worked the required 1,250 hours in the previous twelve months to be eligible for FMLA leave. (Docket No. 40-

12 at 2; Docket No. 40-21 at 6; Docket No. 42 at 4). The letter also stated that Magruda must reimburse Belle Vernon for benefits accrued during the entire period of Magruda's absence attributable to the rejected FMLA leave, which was approximately from August 4, 2005 to September 7, 2005. (Docket No. 40-12 at ¶ 2; Docket No. 40-21 at 6). In response to Belle Vernon's September 1st letter, Magruda's union president wrote a letter strongly disagreeing with the assessment. (Docket No. 40-13 at 2; Docket No. 42 at 5).

Magruda took an extended absence a fourth time on or around November 14, 2005. (Docket No. 40-21 at 6; Docket No. 42 at 11). The dispute between Belle Vernon and Magruda over the denied August 2005 FMLA leave had not been resolved at the time of Magruda's fourth absence. (Docket No. 42 at 5-6). The November 2005 leave was the result of an ongoing anxiety and depression disorder. (Docket No. 40-14 at 2; Docket No. 42 at 7). As he had no accumulated vacation or sick days, Magruda applied for FMLA leave a third time. (Docket No. 40-14 at 4; Docket No. 40-21 at 5; Docket No. 42 at 7). Under the rationale that Magruda had not worked the required 1,250 hours over the previous twelve months, Belle Vernon denied Magruda's request for FMLA leave in a letter dated November 15, 2005. (Docket No. 40-15 at 2; Docket No. 40-21 at 6; Docket No. 42 at 11). Magruda responded to the November 15th correspondence, with a letter stating that he disagreed with Belle Vernon's position. (Docket No. 40-16 at 2). Belle Vernon did not waiver from its viewpoint, and terminated Magruda's position on December 19, 2005. (Docket No. 40-21 at 6-7; Docket No. 42 at 11).

Magruda learned of the termination via certified mail on December 20, 2005, and filed a grievance on December 21, 2005. (Docket No. 40-17 at 2; Docket No. 40-18 at 2; Docket No. 40-21

at 7; Docket No. 42 at 11). After filing the grievance, Magruda did not contact Belle Vernon until a phone call to his supervisor on February 27, 2006. (Docket No. 40-21 at 7). During the February 27th call, Magruda told his supervisor that he was medically cleared to return to work. (Docket No. 40-21 at 7). Magruda also sent Belle Vernon correspondence on March 1, 2006, and March 17, 2006. (Docket No. 40-21 at 7). These letters emphasized that Magruda was medically capable of returning to work and that he had contacted his supervisor on February 27, 2006 to advise him of his ability to return. (Docket No. 40-21 at 7).

Arbitration regarding the December 21, 2005 grievance was conducted on October 4, 2006. (Docket No. 40-21 at 7). The arbitrator found that Magruda's November 15, 2005, request for FMLA leave was improperly denied. (Docket No. 40-21 at 7). As a result, the arbitrator awarded Magruda full back pay and medical expense reimbursement for a maximum FMLA leave period of twelve weeks. (Docket No. 40-21 at 7). The arbitrator set Magruda's FMLA leave period as beginning on his November 14, 2005 application date, and ending on February 6, 2006. (Docket No. 40-21 at 7). However, because Magruda did not contact Belle Vernon until, at the earliest, February 27, 2006, she found that Magruda was impermissibly absent from work beginning on February 6, 2006. (Docket No. 40-21 at 7). The arbitrator thus ruled on November 30, 2006 that Magruda was terminated for just cause. (Docket No. 40-21 at 7; Docket No. 42 at 13).

## III.    PROCEDURAL BACKGROUND

On July 26, 2006, Magruda commenced the instant action by filing a Complaint against Belle Vernon in order to recover damages for injuries allegedly sustained pursuant to the Family and Medical Leave Act of 1993 ("FMLA"). (Docket No. 1). Belle Vernon filed its Answer to Magruda's

Complaint on October 3, 2007.  (Docket No. 25).[1]

Magruda filed the instant Motion for Partial Summary Judgment and Concise Statement of Material Facts on July 11, 2008. (Docket Nos. 37, 38).  Belle Vernon filed a Motion for Summary Judgment, a Concise Statement of Material Facts, and an accompanying brief in support that same day.  (Docket Nos. 39, 40, 41, 42).  Magruda responded to Belle Vernon's Motion for Summary Judgment on September 11, 2008. (Docket Nos. 44, 45).  Also on September 11, 2008, Belle Vernon filed a Response to Magruda's Concise Statement of Material Facts, and brief in opposition to the Motion for Partial Summary.  (Docket Nos. 47, 48).  The instant motion is now fully briefed and ripe for disposition.

---

[1]

The instant matter was previously assigned to Judge Thomas M. Hardiman. Belle Vernon filed a Motion to Dismiss on October 10, 2006, with a supporting brief filed the next day.  (Docket No. 6; Docket No. 7).  On October 18, 2006, Magruda filed a Response to the Motion to Dismiss and appended a Motion for Partial Summary Judgment. (Docket No. 10). Magruda submitted briefs in support of his Response and Motion for Partial Summary Judgment the next business day. (Docket No. 11). Belle Vernon filed a Response to Magruda's Motion for Partial Summary Judgment on November 17, 2006. (Docket No. 13).

On April 6, 2007, the instant matter was reassigned to the undersigned Judge.  Belle Vernon orally withdrew its Motion to Dismiss during a status conference held on July 18, 2007. (Docket No. 21).  Subsequently, on August 20, 2007, Belle Vernon filed a supplemental brief in support of its Brief in Opposition to the Motion for Partial Summary Judgment. (Docket No. 22). Magruda's Motion for Partial Summary Judgment was denied on September 17, 2007, for failure to comply with local rules. (Docket No. 23). Belle Vernon filed an Answer to Magruda's Complaint on October 3, 2007.  (Docket No. 25).  Belle Vernon subsequently filed a series of motions to extend the discovery period over the next several months, all of which were granted.  Discovery finally ended on June 10, 2008.  (Docket No. 33).  This case was referred to mediation with Magistrate Judge Lisa Pupo Lenihan on June 12, 2008, but did not resolve.  (Docket No. 36).

## IV.    LEGAL STANDARD

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c).  Pursuant to Rule 56,  the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A dispute of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005).  In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy*, 412 F.3d at 249.  As to materiality, the relevant substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*  "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

"The court may consider any material or evidence that would be admissible or usable at trial

in deciding the merits of a motion for summary judgment." *Turner v. Leavitt*, Civ. Action No. 05-942, 2008 WL 828033, at *4 (W.D.Pa. March 25, 2008) (citing *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993) (citing 10 WRIGHT AND MILLER, FEDERAL PRACTICE § 2721, at 40 (2d ed.1983))); *Pollack v. City of Newark*, 147 F.Supp. 35, 39 (D.N.J.1956), *aff'd*, 248 F.2d 543 (3d Cir.1957), *cert. denied,* 355 U.S. 964 (1958) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence").

In evaluating the evidence, the Court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in their favor. *Watson v. Abington Twp*., 478 F.3d 144, 147 (3d Cir.2007). However, the court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.,* 142 F.3d 639, 643 n.3 (3d Cir.1998) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir.1994)).

## V.    DISCUSSION

The first issue to be decided in the instant motion is whether Magruda qualified for FMLA leave when he requested it on November 14, 2005 based on the fact that he had been fully reinstated by the arbitration decision of March 3, 2005, or if he was barred from requesting such leave because he did not actually work 1,250 hours in the twelve-month period preceding the November 14, 2005 request. The parties have each moved for summary judgment on this issue. (Docket Nos. 37 and 39).

In its motion for summary judgment, Belle Vernon contends that it is entitled to summary judgment because Magruda should be collaterally estopped from bringing this case because he has

already pursued his grievance through arbitration. (Docket No. 43 at 10). Belle Vernon further argues that even if the Court finds that Magruda may pursue his FMLA claim, the Court should find as a matter of law that Belle Vernon did not act in bad faith when it denied Magruda's request for FMLA leave. (Docket No. 43 at 9).

Magruda has moved for partial summary judgment on the issue of whether Belle Vernon violated the FMLA based on its failure to include the time Magruda would have worked but for his wrongful termination in calculating his hours of service. (Docket No. 37 at 2). Belle Vernon argues that even if Magruda has met the 1,250 hours of service requirement under the FMLA, his motion should be denied because genuine issues of material fact exist as to whether he met the requirements of the FMLA, separate and apart from the 1,250 hours of service requirement. (Docket No. 48 at 2).

The Court will address each of these arguments, in turn.

**A.       The Parties' Cross-Motions on the FMLA "Hours of Service" Requirement**

The FMLA allows "eligible employees" to take up to twelve weeks of unpaid leave during any twelve-month period for specific medical reasons that are outlined in the statute. 29 U.S.C. § 2601(b)(2). In order to be eligible for this leave, an employee must have been employed:

(i)       for at least 12 months by the employer with respect to whom leave is requested . . . ; and

(ii)      for at least 1,250 hours of service with such employer during the previous 12-month period.

29 U.S.C. § 2611(2)(A). The statute does not define the term "hours of service;" rather, it provides that "[f]or purposes of determining whether an employee meets the hours of service requirement . . . the legal standards established under section 7 of the Fair Labor Standards Act of 1938 [29 U.S.C.

207] shall apply." 29 U.S.C. § 2611(2)(C).  However, section 7 of the FLSA does not define the term "hours of service."

Magruda argues that the time he would have worked but for his wrongful termination should be included in the hours of service calculation (Docket No. 37 at 9), while Belle Vernon contends that this time should be excluded, as Magruda performed no actual work during the period between his termination and reinstatement (Docket No. 43 at 3).  As neither the FMLA nor the FLSA defines what constitutes "hours of service," the Court must interpret section 7 of the FLSA to determine whether  the time period at issue should have been included in Belle Vernon's hours of service calculation.

### 1.    Interpreting the "Hours of Service" Requirement

When interpreting the language of a statute, the role of the courts is to effectuate the intent of Congress. *See Negonsott v. Samuels*, 507 U.S. 99, 104 (1993); *see also Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001).  "Because it is presumed that Congress expresses its intent through the ordinary meaning of its language, every exercise of statutory interpretation begins with an examination of the plain language of the statute." *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001).  "[W]hen interpreting a statute, courts should endeavor to give meaning to every word which Congress used and therefore should avoid an interpretation which renders an  element of the language superfluous." *Id*.  "Where a statute's text is ambiguous, relevant legislative history, along with consideration of the statutory objectives, can be useful in illuminating its meaning." *United States v. E.I. Dupont De Nemours & Co.*, 432 F.3d 161, 169 (3d Cir. 2005).  At the same time, courts must "avoid constructions that produce odd or absurd results or that are inconsistent

with common sense." *Disabled in Action v. SEPTA*, 539 F.3d 199, 210 (3d Cir. 2008)(internal citations omitted).

        *2.*        Plumley v. S. Container *and* Ricco v. Potter

The United States Courts of Appeals for the Third Circuit has yet to decide whether an employee who has been wrongfully discharged and reinstated should be credited under the FMLA for those hours he would have worked but for his unlawful termination, and the two Courts of Appeals that have ruled on the issue have come to opposite conclusions.

In *Plumley v. S. Container,* 303 F.3d 364 (1st Cir. 2002), the United States Court of Appeals for the First Circuit held that the hours an employee would have worked but for their wrongful termination should be excluded from an employer's hours of service calculation. In that case, an employee's request for leave under the FMLA was denied because the employer maintained he had not worked the requisite 1,250 hours in the previous year. During the year previous to the denial, the employee was terminated and then fully reinstated pursuant to an arbitral award. *Id.* at 367. The employer maintained that, under the FMLA, it was not required to count the hours the employee would have worked but for the termination in calculating Magruda's hours of service. *Id*. at 368. The employee brought suit against the employer, and argued that the hours he would have worked but for his wrongful termination should have been included in calculating his hours of service under the FMLA. *Id*. The district court found that the employer had properly excluded the hours from the calculation, and entered summary judgment in favor of the employer. *Id.*

On appeal, the United States Court of Appeals for the First Circuit held that the time during which the employee did not work due to the wrongful termination was properly excluded from the

hours of service calculation, and therefore he was not entitled to FMLA benefits. *Id.* at 372. In reaching this conclusion, the Court of Appeals looked, as the FMLA directs, to the legal standards set forth in section 7 of the FLSA. *Id.* at 369. Section 7 of the Fair Labor Standards Act addresses pay classifications and provides that the "'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee . . . ." 29 U.S.C. § 207(e). The court focused its analysis on the words "for employment," and noted that the FLSA defines "employ" as "to suffer or permit to work." *Plumley*, 303 F.3d at 369. The Court of Appeals then explained the legal definitions of "work" and "employment."

> For legal purposes, the standard definition of "employment" is "work for which one has been hired and is being paid by an employer." BLACK'S LAW DICTIONARY 545 (7th ed. 1999). By like token, the word "work" is defined in its verb form as "to exert effort; to perform, either physically or mentally." *Id*. at 1599. Merging these definitions into one coherent sentence, we find that the statutory language, in every technical sense, indicates that only those hours that an employer suffers or permits an employee to do work (that is, to exert effort, either physically or mentally) for which that employee has been hired and is being paid by the employer can be included as hours of service within the meaning of the FMLA.

*Id*. The Court of Appeals went on to reason that this interpretation was in line with the remainder of section 7 of the FLSA, which outlines several specific activities that are not included in the "regular rate," thereby supporting the conclusion that "any compensation that is not paid for hours actually worked in the service and at the gain of the employer is not to be counted toward hours of service." *Id.* at 370.

Conversely, in *Ricco v. Potter*, 377 F.3d 599 (6th Cir. 2004), the United States Court of Appeals for the Sixth Circuit held that the hours an employee would have worked but for her unlawful termination were not excluded from her hours of service under the FMLA. Similar to the

court in *Plumley*, the Sixth Circuit focused its analysis on section 7 of the FLSA. However, rather than focusing on the definitions of "employ" and "work," the court in *Ricco* instead focused on the types of activities that are excluded from the "regular rate," and reasoned that:

> [Section 7] limits additional unenumerated exclusions from the determination of an employee's "regular rate" to "other similar causes," and that time that an employee does not work due to vacation or illness is conceptually dissimilar from time that an employee does not work due to unlawful termination.

*Ricco*, 377 F.3d at 605. The Court of Appeals then concluded that "time that an employee would have worked but for her unlawful termination is not an 'other similar cause' within the meaning of [section 7]." *Id.* In reaching this conclusion, the Court of Appeals noted that "the goal of a make-whole award is to put the employee in the same position that she would have been in had her employer not engaged in the unlawful conduct." *Id.* at 606.

Predictably, Magruda has urged this Court to adopt the Sixth Circuit's interpretation of the FMLA's hours of service requirement as set for in *Ricco*, while Belle Vernon argues that the Court should adopt the First Circuit's interpretation in *Plumley*.

### 3. Application to the Instant Case

As previously discussed, the FMLA directs courts to section 7 of the FLSA when determining whether an employee has met the 1,250 hours of service requirement. 29 U.S.C. § 2611(2)(C). Section 7 of the FLSA is entitled "Maximum hours," and the applicable subsection provides a definition of the term "regular rate." *See* 29 U.S.C. § 207(e); *see also Plumley*, 303 F.3d at 369; *Ricco*, 377 F.3d at 604.

Section 7(e) of the FLSA provides that "the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee."

29 U.S.C. § 207(e). However, as previously noted, it specifically excludes certain remunerations from the regular rate, including:

> payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment[.]

29 U.S.C. § 207(e)(2).

This Court agrees with Sixth Circuit's reasoning *Ricco* as it applies to the interpretation of section 7 of the FLSA. While section 7 excludes from the regular rate a number of payments made for periods when no work is performed, it limits these exclusions to those specifically listed in the statute and "other similar cause[s]." 29 U.S.C. § 207(e)(2). As this Court must attempt to give meaning to every word in the statute, it would be inappropriate to interpret section 7 as imposing a blanket rule that all periods for which an employee receives remuneration when no work was performed should be excluded from the "regular rate." Rather, the Court may only exclude those activities that are *similar* to those set forth in 29 U.S.C. § 207(e)(2). *See Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001)("[W]hen interpreting a statute, courts should endeavor to give meaning to every word which Congress used."). Furthermore, the Court is mindful of the maxim *expressio unius est exclusio alterius*, i.e., the expression of one thing implies the exclusion of another, and notes that Congress did not include backpay awards in the list of remunerations excluded from the regular rate. *See TRW Inc. v. Andrews*, 534 U.S. 19, 28-29 (2001)(discussing and applying the canon).

Here, Magruda did not work during the period in question because he was unlawfully

terminated. As the Sixth Circuit emphasized in *Ricco*, "[s]uch hours are different from occasional hours of absence due to vacation, holiday, illness, and the employer's failure to provide work, etc., in that they are hours that the employee wanted to work but was *unlawfully prevented* by the employer from working." *Ricco*, 377 F.3d at 605 (emphasis in original). Thus, this Court does not interpret the hours of service requirement of the FMLA to exclude time during which an employee would have worked but for his unlawful termination when that employee has been awarded full reinstatement.

This interpretation is supported by the legislative history of the statute, which indicates that "[t]he minimum hours of service requirement is meant to be construed broadly." S. REP. 103-3, 23 (1993), *reprinted in* 1993 U.S.C.C.A.N 3, 25. Moreover, the legislative history also indicates that the primary purpose of the 1,250 hours of service provision was to exclude seasonal and part time employees from receiving benefits. *See Id.* ("[T]he bill does not cover part time or seasonal employees working less than 1,250 hours a year.").

Furthermore, the Court must avoid a construction of the FMLA that would "produce odd or absurd results." *Disabled in Action v. SEPTA*, 539 F.3d 199, 210 (3d Cir. 2008). If this Court were to exclude the number of hours an employee would have worked but for his wrongful termination, employers would essentially be rewarded for engaging in unlawful conduct. *See Ricco,* 377 F.3d at 605. Here, Magruda was awarded full reinstatement in March 2005 because the arbitrator found, in part, that he was entitled to, but not granted, FMLA leave. (*See* Docket No. 40-9 at 15-16). Thus, if this Court were to adopt Belle Veronon's interpretation of the statute, Belle Vernon would be permitted to deny Magruda FMLA benefits for no other reason than its previous failure to abide by

the statute. 29 U.S.C. §§ 2601, *et seq.* The Court does not believe that Congress intended this absurd result.

For the foregoing reasons, the Court finds that Belle Vernon improperly excluded the number of hours Magruda would have worked but for his wrongful termination when calculating his hours of service under the FMLA. Accordingly, Magruda's motion is GRANTED in this regard and Belle Vernon's motion is DENIED in this regard.

**B.    Defendant's Motion for Summary Judgment Regarding the November 30, 2006 Arbitration**

Belle Vernon argues that even if the time Magruda would have worked but for his wrongful termination is included in the 1,250 hours of service calculation, Magruda should be collaterally estopped from bringing this suit because he has already pursued this grievance through arbitration, a defense Belle Vernon raised in its Answer. (Docket No. 25 at 9; Docket No. 43 at 10). Magruda counters that neither the collective bargaining agreement nor the relevant case law prevent him from bringing a cause of action under the FMLA simply because the union demanded arbitration on his behalf. (Docket No. 45 at 3).

At the outset, the Court notes that although Belle Vernon has urged this Court to find that the November 30, 2006 arbitration award precludes the instant litigation, it has not presented this Court with the collective bargaining agreement ("CBA") that governed the arbitration. The only reference to the CBA that governed said arbitration among the exhibits submitted by the parties are the provisions of the CBA quoted in the November 30, 2006 Arbitration Award.[2]

---

[2]

The Court notes that Belle Vernon's failure to include in its appendix a document which is

As Defendant has moved for summary judgment on this issue, this Court must interpret all facts in a light most favorable to Plaintiff. *Startzell v. City of Philadelphia*, 533 F.3d 183, 192 (3d Cir. 2008). Therefore, because Belle Vernon has failed to submit the CBA for the court's consideration of the instant motion, the Court must make all inferences from the evidence before it in favor of Magruda. *Id*.

Neither the United States Supreme Court nor the United States Court of Appeals for the Third Circuit have ruled as to whether an employee may proceed with a FMLA claim in federal court when the issue has been decided in a previous arbitration decision. However, in the context of Title VII cases, the United States Supreme Court has held that:

> the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII. The federal court should consider the employee's claim de novo. The arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate.

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 59-60 (1974).

In the context of an Americans with Disabilities Act claim, the Supreme Court has also made a distinction between the resolution of disputes that arise from a CBA as opposed to those disputes which arise from alleged violations of federal statutory rights:

> [A]rbitrators are in a better position than courts to interpret the terms of a CBA. This rationale finds support in the very text of the [Labor Management Relations Act], which announces that "final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising *over*

referenced in its Concise Statement of Material Facts is a violation of Rule 56.1(B) of the Local Rules of the United States District Court for the Western District of Pennsylvania.

> the application or interpretation of an existing collective bargaining agreement." 29
> U.S.C. § 173(d). The dispute in the present case, however, ultimately concerns not
> the application or interpretation of any CBA, but the meaning of a federal statute. The
> cause of action [plaintiff] asserts arises not out of contract, but out of the ADA, and
> is distinct from any right conferred by the collective-bargaining agreement.

*Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 78-79 (1998)(emphasis in original)(internal

citations omitted). Similarly, the rights at issue in this case are not conferred by Magruda's CBA.

Rather, he is seeking to enforce rights that are conferred upon him under the FMLA.

Moreover, the portions of the CBA that are quoted in the November 2006 Arbitration Award

indicate that a grievance for the purposes of the CBA's grievance procedure is defined as "a

Complaint regarding the meaning, interpretation, or application of any provisions of *this*

*Agreement*." (Docket No. 40-21 at 3)(emphasis added). Nowhere in the quoted provisions of the

CBA does the agreement explicitly incorporate Magruda's statutory rights under the FMLA.(*See*

Docket No. 40-21 at 2-4). Furthermore, this Court has not been presented any evidence that, under

the CBA, Magruda waived his rights to bring his FMLA claim in a federal court. *See Wright*, 525

U.S. at 80. ("*Gardner-Denver* at least stands for the proposition that the right to a federal forum is

of sufficient importance to be protected against the less-than-explicit union waiver in a CBA.").

Accordingly, this Court finds that the November 2006 arbitration award does not preclude Magruda

from pursuing his FMLA claim in this Court.

While the Third Circuit has not yet applied the principles outlined in *Gardner-Denver* and

*Wright* to FMLA claims, this Court's application of those principles to the instant case is in line with

the holdings of other Courts of Appeals that have decided this issue. *See Nance v. Goodyear Tire*

*& Rubber Co.*, 527 F.3d 539, 548 (6th Cir. 2008)(holding that an adverse arbitration award does not

preclude an employee from pursuing claims based rights afforded under the FMLA); *Rogers v. New York Univ.*, 220 F.3d 73, 76 (2d Cir. 2000)(where a CBA does not specifically make compliance with the FMLA a contractual commitment that is subject to the arbitration clause, the agreement was not sufficiently specific to waive plaintiff's right to bring an action in federal court based on the same conduct). In fact, although this Court has found the Sixth Circuit's reasoning in *Ricco* to be more persuasive than the First Circuit's reasoning in *Plumley* in regard to the statutory interpretation of the FMLA's hours of service requirement, even the Court of Appeals in *Plumley* held that statutory rights created under the FMLA "cannot be consigned to the grievance procedures created under collective bargaining agreements." *Plumley v. S. Container*, 303 F.3d 364, 373-374 (1st Cir. 2002). Furthermore, at least two other district courts in this Circuit have made a similar finding. *See Solovey v. Wyo. Valley Health Care Sys. - Hosp.*, 396 F. Supp. 2d 534, 536 (M.D. Pa. 2005); *Shtab v. Greate Bay Hotel & Casino, Inc.*, 173 F. Supp. 2d 255, 261 (D.N.J. 2001).

Upon consideration of the foregoing, the Court finds that November 30, 2006 arbitration award does not preclude Magruda from bringing his FMLA claim in this Court. Accordingly, Defendant's motion is DENIED in this regard.

## C. Defendant's Motion for Summary Judgment Regarding Magruda's Allegations of Bad Faith

Belle Vernon also contends that the Court must find, as a matter of law, that Belle Vernon did not act in bad faith, because it relied on the advice of counsel when it denied Magruda's FMLA request. (Docket No. 43 at 9). Magruda counters that genuine issues of material fact exist as to whether the denial was made in bad faith. (Docket No. 45 at 7).

Upon a showing by an employee that his employer has violated the FMLA, the employee is

entitled to damages equal to "wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation," plus interest. 29 U.S.C. § 2617(a)(1)(A)(i)-(ii). That award is doubled as liquidated damages unless the employer proves that the violation was in good faith and that it had reasonable grounds for believing the employee's termination was not a violation of FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii).[3]

Although the FMLA does not define good faith, the legislative history of the statute indicates that "Congress intended the remedial provisions of the FMLA to mirror those in the FLSA." *Frizzell v. Southwest Motor Freight*, 154 F.3d 641, 644 (6th Cir.1998); *see also* S. REP. NO. 103-3, at 35 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 37 ("[The FMLA's] enforcement scheme is modeled on the enforcement scheme of the FLSA . . . . The relief provided in FMLA also parallels the provisions of the FLSA."). Accordingly, this Court looks to the Third Circuit's holdings regarding the liquidated damages provision of the FLSA, which provides that upon an employer's showing of good faith, "the court may, in its sound discretion, award no liquidated damages." 29 U.S.C. § 260. *See Brown v. Nutrition Mgmt. Servs. Co.*, 2009 U.S. Dist. LEXIS 4199 (E.D. Pa. Jan. 21, 2009)(holding that in determining the standard for good faith under the FMLA, the court is guided by the Third Circuit Court of Appeals' interpretation of the analogous provision of the FLSA).

"[A] defendant employer bears the 'plain and substantial' burden of proving [it] is entitled to discretionary relief from the FLSA's mandatory liquidated damages provision." *Martin v. Cooper*

---

[3]

Belle Vernon in its brief has not clearly stated why it would like the Court to make this ruling at this time. Thus, based on the damages available under the statute, the Court can only presume that it has made this argument in an attempt to prevent Magruda from recovering liquidated damages.

*Elec. Supply Co.,* 940 F.2d 896, 907 (3d Cir. 1991)(quoting *Tri-County Growers, Inc.*, 747 F.2d at

128-29). "In determining an employer's subjective good faith, a court must find that the employer

had an honest intention to ascertain and follow the dictates of the [statute]." *Brooks v. Village of

Ridgefield Park*, 185 F.3d 130, 137 (3d Cir. 1999).

Here, there is insufficient evidence for the Court to make finding that Belle Vernon acted in

good faith, as there is conflicting evidence as to whether Belle Vernon made an honest effort to

ascertain and follow the FMLA. Although Belle Vernon has presented some evidence that it denied

Magruda's FMLA request on the basis of the advice of counsel (*See* Docket No. 42 at 5-6 ), given

its history of improperly denying Magruda's request for FMLA leave (*See* Docket No. 40-9), as well

as the existence of case law that indicated its actions may be violation of the FMLA,[4] the Court

cannot determine with the evidence before it whether Belle Vernon was attempting to make a good

faith effort to comply with the FMLA, or whether it was primarily concerned with terminating an

employee that had previously brought FMLA claims against it. Thus, Belle Vernon has not met its

"plain and substantial" burden of proving that it acted in good faith. *Martin*, 940 F.2d at 907; *cf.

Zawadowicz v. CVS Corp.*, 99 F. Supp. 2d 518, 540 (D.N.J. 2000). Accordingly, Defendant's

motion is DENIED in this regard.

    **D.**    **Plaintiff's Motion for Partial Summary Judgment**

---

[4]

    The Court notes that although the District's Solicitor, Ira Weiss, wrote a letter on August 24, 2005 indicating that Magruda was not eligible for FMLA based on the *Plumley* decision, the letter makes no reference to the *Ricco* decision, even though that decision had been filed on July 27, 2004.

In his Motion for Partial Summary Judgment, Magruda argues that this Court should find that Belle Vernon has violated the FMLA based on Defendant's termination. (Docket No. 37 at 9). Belle Vernon contends that Magruda's Motion for Partial Summary Judgment should be denied even if the time he would have worked but for his termination is included in the FLSA calculation because genuine issues of material fact exist as to whether Magruda had a qualifying serious medical condition under the FMLA. (Docket No. 48 at 2).

In order to qualify for leave under the FMLA, an eligible employee must have "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Here, Magruda provided Belle Vernon with certification from his health care provider, Jacquelyn M. Albert,[5] that he was requesting leaved based on "an adjustment disorder with depression and anxiety" as well as "anger management problems." (Docket No. 38-3).

However, Belle Vernon has presented evidence that calls into question whether Magruda had a serious health condition. For example, Ms. Albert testified that she wrote that Magruda would need 3-4 months to recover because "that was length of time [Magruda] felt that he needed off." (Docket No. 40-3 at 33). Ms. Albert further testified that Magruda felt that this specific length of time was necessary because Magruda "wanted to go to Florida." (*Id.*). Viewing this evidence in a light most favorable to Defendant, there is a genuine issue of material fact as to whether Magruda had a serious health condition that entitled him to leave under the FMLA. Accordingly, Magruda's

---

[5] Albert is a licensed clinical social worker with a Bachelor's degree in nursing and a Master's degree in social work, and has been in private practice since 1995. (Docket No. 42 at 5).

Motion for Partial Summary Judgment is DENIED in this regard.

## VI. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion for Summary Judgment (Docket No. 39). Furthermore, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment (Docket No. 37), in part, and finds as a matter of law that Magruda's March 2005 arbitral award should have been included in Belle Vernon's FMLA hours of service calculation. The Court DENIES Plaintiff's Motion, in part, as there are genuine issues of material fact as to whether Magruda qualified for leave under the FMLA. An appropriate Order will follow.

_s/ Nora Barry Fischer_
Nora Barry Fischer
United States District Judge


Dated: February 23, 2009
cc/ecf: All counsel of record.